UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIMBERLY ANN LAFLAMME,

    Plaintiff,

        v.                                                No. 3:18-cv-00585(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Kimberly Ann Laflamme's, applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 19]. The Commissioner, in turn, has moved for an order affirming her

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

decision. [Doc. # 23]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court reverses the decision of the Commissioner and remands the matter for additional proceedings.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

### a. Facts

Plaintiff filed applications for DIB and SSI on November 24, 2014, alleging a disability onset date of December 1, 2013. Her claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On October 3, 2016, a hearing was held before Administrative Law Judge Ellen Parker Bush (the "ALJ"). Plaintiff appeared with an attorney. Plaintiff and a vocational expert ("VE") testified at the hearing. On February 17, 2017, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On February 7, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-three years old on the alleged disability onset date. She has a ninth-grade education. She has past work experience as a food server and as a companion. She is alleging disability based on mental impairments.

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 20]. The Court adopts this stipulation and incorporates it by reference herein.

### b. The ALJ's Decision:

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an

impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the

Listings). If so, and it meets the durational requirements, the Commissioner will consider the

claimant disabled, without considering vocational factors such as age, education, and work

experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and

(5) if the claimant is unable to perform his or her past work, the Commissioner then determines

whether there is other work in the national economy which the claimant can perform. *See* 20

C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps,

while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758

F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since the alleged onset date. (R. 15). At Step Two, the ALJ found the following

severe impairments: depression; posttraumatic stress disorder; and generalized anxiety disorder.

(*Id.*). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments. (R.

16). In making this finding, the ALJ found that Plaintiff has no limitations in understanding,

remembering or applying information; moderate limitations in interacting with others; moderate

limitations in concentrating, persisting, or maintaining pace; and moderate limitations in

adapting or managing oneself. (R. 16-17). Next, the ALJ determined Plaintiff retains the

following residual functional capacity[2]:

> Plaintiff can perform a full range of work at all exertion levels with the following
> nonexertional limitations: she can perform simple, routine, repetitive tasks and
> can maintain attention and concentration for two-hour blocks. She can tolerate

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his
or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

> brief interactions with supervisors and co-workers, but cannot interact with the public. She can adapt to ordinary changes in work tasks.

(R. 17-21). In making this RFC assessment, the ALJ considered the opinion of non-examining state agency psychiatrist Dr. Hill, who opined, on November 23, 2015, that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and one or two repeated episodes of decompensation, each of extended duration. (R. 123). Dr. Hill further opined that Plaintiff would have no limitations regarding understanding and memory. (R. 124). He found Plaintiff would be moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, and working in coordination with or in proximity to others without being distracted by them. (R. 125). Dr. Hill indicated that, "when abstinent," Plaintiff could remember and carry out simple instructions, keep appointments, maintain attention and concentration for at least two hours, and complete simple tasks consistently when motivated, but would be occasionally distracted by residual side effects, limiting her ability to carry out detailed instructions. (*Id.*). In addition, Dr. Hill found Plaintiff would be moderately limited in interacting with the general public, and that she may feel uncomfortable in certain settings, but can function and work alone and relate to work staff when motivated. (*Id.*). He also found that Plaintiff would have moderate limitations in her ability to set realistic goals and make plans independently of others. (*Id.*). The ALJ gave great weight to Dr. Hill's opinion, reasoning it was consistent with the medical evidence of record, and that evidence submitted after he rendered the opinion was not inconsistent with Dr. Hill's overall assessment. (R. 20).

The ALJ also discussed a letter written by Mary Stacie, Licensed Professional Counselor, on March 16, 2016. Counselor Stacie wrote that Plaintiff's past trauma stretched back to childhood, and was recently exacerbated by an assaultive relationship which she fled. (R. 914).

5

Counselor Stacie stated that Plaintiff continues to live in fear of retribution from fleeing this relationship. (*Id.*). She concluded that, "under the conditions of the current symptoms of her PTSD, [Plaintiff] is unable to be engaged in any employment activity at this time or for the foreseeable future." (*Id.*). The ALJ gave Counselor Stacie's opinion little weight, finding that she was not an acceptable medical source[3], and that the opinion did not provide functional work-related limitations and was inconsistent with the medical evidence of record. (R. 20).

At Step Four, the ALJ found Plaintiff unable to perform any past relevant work. (R. 21). Finally, at Step Five, the ALJ relied on the testimony of the VE to find that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (R. 21-22). Specifically, the ALJ found Plaintiff can perform the positions of housekeeper, cafeteria attendant, and price marker. (R. 22). Accordingly, the ALJ found Plaintiff not to be disabled.

## **DISCUSSION**

On appeal, Plaintiff first argues that the ALJ's RFC finding was the product of legal error and was unsupported by substantial evidence. The Court agrees, and finds remand is appropriate.

In assessing a claimant's RFC, the ALJ must consider objective medical evidence and medical opinions, as well as the claimant's subjective symptoms. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). While the claimant bears the burden of providing evidence relevant to the RFC determination, the ALJ is responsible for developing a claimant's complete medical history, including obtaining consultative exams and contacting treatment providers. *Id.*

---

[3] The regulations differentiate between "acceptable medical sources" and "other sources" (with counselors falling into the latter category); an ALJ is, however, required to review and account for all evidence in the record regardless of its source. *See Hernandez v. Astrue*, 814 F.Supp.2d 168, 181-82 (E.D.N.Y. 2011).

The regulations instruct the ALJ to consider "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations" and "descriptions and observations of [the claimant's] limitations…, including limitations that result from… symptoms, such as pain." *Id.* As the regulations indicate, the purpose of the RFC determination is to ascertain what a claimant *can do* despite those limitations. *See id.* at (a)(1). Thus, the ALJ "must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities*." *Aiello v. Comm'r of Soc. Sec.*, No. 5:06-CV-1021, 2009 WL 87581, at *3 (N.D.N.Y. Jan. 9, 2009) (emphasis in original). When a claimant's medical records contain "findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, the general rule is that the Commissioner may not make the connection [herself]." *Kain v. Colvin*, No. 14-CV-650S, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017) (internal quotation marks omitted).

The medical record in this case (with respect to evidence since the alleged onset date) contained mental health treatment notes, notes from two inpatient admissions for suicidal ideation (in February 2014 (R. 328) and December 2015 (R. 916)) and from an inpatient admission for severe posttraumatic stress disorder symptoms (in August-September 2016 (R. 1275)). The record also contained Counselor Stacie's letter and Dr. Hill's opinion, as set forth above. The record did not contain a medical opinion from a treating source assessing Plaintiff's mental functional limitations. The record did not contain a medical opinion from an examining source assessing Plaintiff's mental functional limitations. Thus, there was no medical opinion from a treating or examining source that related the medical evidence to what Plaintiff can and

7

cannot due functionally. And, Dr. Hill, the only other medical source who provided an opinion, did so on an incomplete record.

Courts in this circuit have held that, "in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments." *Staggers v. Colvin*, No. 3:14-CV-717 JCH, 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015) (citing cases). When an ALJ fails in his or her duty to request opinions or assessments to develop the record, remand is not required when "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). In *Tankisi*, the Second Circuit found remand for development of the record was not required because the medical record, although devoid of a formal opinion of the claimant's RFC from a treating physician, was "quite extensive," and included an assessment of Tankisi's limitations from a treating source and functional assessments from several consultative examiners. *Id.* When, however, a record does not contain sufficient evidence from which the ALJ can assess a claimant's RFC, including when the record is lacking a functional assessment from a treating or examining medical source, remand is required. *See Jermyn v. Colvin*, No. 13-CV-5093 MKB, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) (remanding for development of the record when evidence before the ALJ was "devoid of any opinions from treating or examining medical sources regarding [claimant's] functional or work capacity limitations" because "the ALJ was obligated to develop the record and obtain RFC assessments from [claimant's] treating and/or examining physicians."); *Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959 GLS/ESH, 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) (finding *Tankisi* inapplicable to a case where the record lacked *any* medical source opinion regarding claimant's functional limitations).

8

In fact, "[c]ourts have distinguished *Tankisi* and remanded where the medical record available to the ALJ is not "robust" enough to obviate the need for a treating physician's opinion." *Hooper v. Colvin*, 199 F. Supp. 3d 796, 815 (S.D.N.Y. 2016). In *Hooper*, for example, the record did not contain a current opinion from a treating physician or from a consultative examiner, and the state agency medical consultants rendered opinions without reviewing the entire medical record. *Id.* The court found that "although the ALJ extensively referred to Hooper's progress notes … in explaining his RFC determination, the ALJ's own interpretation of the treatment notes does not supersede the need for a medical source to weigh in on Hooper's functional limitations." *Id.* at 816.

Likewise, in *Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010), *report and recommendation adopted,* No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010), the record before the ALJ consisted of mental health records, an opinion from a state agency medical consultant who concluded the record was insufficient for an RFC determination, and claimant's testimony at the hearing. The record did not contain an RFC opinion "from any medical source." *Id.* The court held that, "[g]iven the limited evidence in the record of plaintiff's functional limitations from her mental impairments, including the lack of any treating or consultative opinions concerning the extent of these limitations," the ALJ "should have ordered a consultative psychological examination or attempted to contact plaintiff's treating physicians to complete the record in order to make a proper RFC determination." *Id.* at *7. The court reasoned, "[w]ithout this additional medical evidence," the ALJ, "as a layperson, could not bridge the gap between plaintiff's affective disorder and schizophrenia and the functional limitations that flow from these impairments." *Id.*

Here, as in *Hooper* and *Walker*, lack of a functional assessment from a treating or examining source necessitates remand. The ALJ should have requested a more specific assessment from a treating source or referred Plaintiff to a consultative examiner. This finding is underscored by the only medical opinion in evidence being rendered on an incomplete record. After Dr. Hill provided his assessment, Plaintiff had two inpatient hospitalizations. (R. 916, 1275). She reported anxiety, difficulty sleeping, and ineffectiveness of medication. (R. 1253). She was observed as anxious and upset, and reported difficulty leaving her home. (R. 1263). These records, arguably, suggest a worsening of Plaintiff's symptoms since Dr. Hill's opining, rendering that opinion of limited value. Since there was no other functional assessment from a treating or examining source, the Court cannot say that the RFC is supported by substantial evidence. Thus, this matter is remanded for further proceedings. On remand, the ALJ is directed to develop the record as it relates to Plaintiff's functional abilities by obtaining RFC assessments from medical sources such as Plaintiff's treatment providers and/or a consultative examiner.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to remand is granted and the Commissioner's motion to affirm is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

This is not a recommended ruling. The consent of the parties allows this Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any

subsequent social security appeal is to be assigned to the Magistrate Judge who issued the ruling that remanded the case.

SO ORDERED, this  24th  day of April, 2019, at Bridgeport, Connecticut.

                                         */s/ William I. Garfinkel*
                                         WILLIAM I. GARFINKEL
                                         United States Magistrate Judge